Good morning. My name is Paul Lindenmuth. I'm here on behalf of the appellant Ken Blair. I'd like to reserve two minutes, if possible. This case comes before you on a grant of summary judgment, so we are dealing with a de novo review. It is a claim brought pursuant to Section 1983 relating to the denial of Mr. Blair's First Amendment rights. This case actually comes down to a couple of very simple issues. And the real issue that's before this court is whether the district court erred in finding that there was not actionable punishment for speech under the facts and circumstances of this case. It is a conceded, literally a conceded point in this case, that Mr. Blair engaged in First Amendment protected activities. He voted as a member of the school board, clearly First Amendment protected conduct. He spoke to a newspaper reporter about waste and corruption, clearly First Amendment protected conduct. And so what are we looking at? We have three elements to our claim. The three elements of our claim is First Amendment protected conduct, an adverse action or reaction, and a causal link between the two. I have a question. You go ahead. Was the vote of his fellow school board members to remove him as an officer of the board protected First Amendment action on their part? It was not. Why not? The reason why is because of the underlying motivations behind it, Your Honor. And the reason why, it was designed to punish. Well, I guess that would be my question. I kind of want to, before, that's what your reason is. But I wonder, would there ever be any circumstances, in your view, that the board could permissibly vote to replace a vice president because they believe the vice president didn't reflect their views? Is there any circumstance where that process could ever be anything but what you're saying? A hypothetical, perhaps, but that's not what happened in this case. What happened in this case was they went into a secret session, they changed their rules, and they oust him as a vice president. Did they violate the law when they went into the secret session? More likely than not, they did. But that's really not an issue that was brought before the district court. Okay, but then what's the import of their going into the secret session if that's not part of the claim? Because one of the things you have to look at as to whether the First Amendment is violated is whether or not the conduct on the part of the defendants was calculated to chill speech. Well, whether they went in secret or openly, it doesn't matter. The act was accomplished. They brought him into a room and said, we want you to apologize to the superintendent. We didn't like what you had to say, and if you don't do it, we're going to change our policies and we're going to remove you as vice president. So what's wrong with the- It was pretty clear it was calculated to chill and punish him. What's wrong with the school board wanting to have leaders that reflected views of the majority of the school board? Why is that a problem in the political arena? Because under the circumstances of this case, all he did was explain his vote. He had the right to explain his vote. Underlying that explanation, he was exposing waste, mismanagement, and corruption. What we talk about when we talk about a politician's vote is the highest form of First Amendment expression we have. Can you cite us a case in this circuit that applies the principle you're articulating to a politician who is disciplined by his fellow politicians? What's your strongest case to support your argument that there is an actionable claim? In our circuit, there's not a whole lot of cases because I think that's something that's more likely to happen on the East Coast. Well, what's your strongest case anywhere in the United States? The Valise case is very helpful. And in Valise, what we had was someone, because of their political views, was removed from- or I believe it was a vote- was removed from their position, filed an appeal, although he was reinstated to that position. And the circuit court, in that instance, found it to be an actionable claim. Well, what's the purpose of- now, in terms of- obviously, the vice president doesn't get a half extra vote. You know, you don't get to break the tie, right? I mean, everyone's vote's equal, correct? So the officers- what is the purpose of having officers? You know, that's the funny part here. In some respects, the vice president position in this school board is not a particularly meaningful position other than symbolically. It's a title. He acts in lieu of the president. So there's really no indication that he ever would have been in that position in the short time he had left in his vice presidency anyway. So what was- the whole purpose here was to send a message. It was the symbolism of what they wanted done here. And the symbolism was to punish him because he went to the newspaper and he talked. That's one construction. But when you say the whole purpose was to send a message, it comes back to the question I asked you about whether the action of the other members of the board had an expressive component such that it was also First Amendment expression. The message that they were sending is, we disagree with what you're saying, and we're going to voice our disagreement as a board by saying, you don't represent us in the vice presidential capacity anymore, right? That is one aspect of this case. There's also other harassment we have to look to as well, particularly when you're in a meeting right before that and you have one of your fellow board members patting your chest with their finger because they're upset with you. So that's only one piece of this case. The response to that is, and there's the one case, I think it's the Pepper or Pieper case, that deals with a censure. In other words, the board said, we're censuring you. We don't like what you did or said or whatever. That's one thing. That is speech. That's just expressing an opinion. We disagree. But when you start removing titles and position, you're going from simply expressing yourself to an action or conduct. You know, it's, you crossed the line. Politics is an ugly business. Well, let's clean it up. And, you know, the give and take in politics is part of the, you know, panoply of the marketplace that, you know, that makes the United States the free speech haven that it is. I find it difficult, I mean, to understand how there can be a Section 1983 cause of action when everything is done by the vote, by vote of the members of the board. And there was nothing taken away from the office. He wasn't removed from office, as was Valez in the case that you cited. He was just removed from a titular position. There's a, when I look at these cases and I look at these issues, there's a real disconnect as to what may occur with a politician versus a regular citizen. And at one point, there's a lot of discussion in these cases about political speech. It is the highest rung. It's up here. In fact, it's higher than that. It works both ways. That's the point. No, no. It cuts both ways. I don't agree. Because the point where you're saying it has this wonderful lofty place in our society, and then we turn around and we give it the weakest possible protections, it doesn't make sense. I think that's your, I think it depends on whose ox is gored. Well, you know, in looking at this case, it really comes down to whether or not he was punished for his speech. The vote part, that's only part of it. How would a board ever remove an officer, an elected board like this, because it disagreed with him or her and said you're not representing the majority's sense on this and we want to have different representation? I mean, if I follow you, any removal because of the majority's disagreement would be action, not speech, and therefore punishing. It depends on what they're disagreeing with. Well, is it content-based? It can be content-based. Well, I think you're right. Is it disputed here? It depends. If you're talking about, here we're talking about exposing corruption, government waste, and voting on something, those are things that are very specific. If they generally disagreed with him on something that had a lesser importance, there might be an argument that you could do that. But we're dealing with the highest run of importance of speech. Was it really disputed here, though, that your client is an outlier relative to the other board members on the superintendent? Yeah, he thinks the superintendent is. . . Well, but does the record reflect that they're 4-1 all the time having to deal with the superintendent? Right. Well, they've been 4-1 since Mr. Blair made a determination that the gentleman's unfit for the office, and he has reasons for it. He's entitled to express those reasons. Nobody's saying he isn't. Well, he should be entitled to express those reasons, and he should be able to go to the news media without punishment. Right. Look, in this case, the real standard is, and the standard always has been in the Ninth Circuit, in assessing whether or not there's been an adverse action, is whether or not the actions taken towards someone who's spoken out is likely to deter a person from speaking out. But you haven't been able to cite us a case that applies that in the arena of an elected official who is subject to removal from an office by vote of his fellow members. That's the peculiar posture of this case that makes a difference. Well, but if we look at the cases that do deal with that issue, they all don't require an absolute removal. It just becomes a matter of degree. You said your strongest case was Velez, and Velez actually involved a removal from office. A temporary removal. There was a reinstatement, and it was still actionable. It wasn't by a vote of the other board members either. It was because they contrived to get criminal charges brought that would result in removal, as opposed to a vote saying you're no longer a president. She was reinstated through an appellate process. Okay, you've exceeded your time. We'll give you a couple minutes for rebuttal. Thank you, Your Honor. May it please the Court, I'm Bill Coates, attorney for Bethel School District. With me at the council table is Dan Montopoli, and in the second row on the left is Tom Siegel, superintendent of Bethel School District. Bethel School District is a large public school district. It has 17,000 plus students, over 2,000 employees. It's governed by a five-person board. The board meets roughly twice, at least in regular meetings, twice a month. And the question was why are the vice president and president important? The president's duties are to preside over the meeting, but between meetings, which I point out is most of the time, and the people who are on these boards do not get compensated. They have other jobs, they have other duties, and they have lives separate and apart from the school district. And the president of the board, besides presiding over the monthly or bimonthly meetings, is the person that coordinates with the superintendent, who is the secretary and chief operating officer of a school district.  It's usually the person the superintendent contacts immediately. He's the person that goes to public events and represents the board. Under the board's policy, he's the spokesperson for the board. Because these are citizens that have other lives, the vice president's position is a little more important than you might think, because when the president is not available, indeed, the vice president steps in. Well, then doesn't that mean if the position is important, doesn't that make a stronger argument that this was punitive if you remove the vice presidency from the plaintiff? It's one of the ironies when he was making his argument. I was looking at my notes and said maybe I should just take that this is a titular position. And unfortunately, that's not. So your argument is that he's a policymaker? He is basically a policymaker. He has no individual rights to make policy-level decisions that are not totally reviewable by the board as a whole. But it's important that he communicate both with the superintendent and the other board members and that the board be able to choose a representative for the majority that represents their views. It goes back to your comments. Don't they have rights to have a leadership that reflects the majority viewpoint? Well, what case says that the majority of the board can remove one of their fellow members from an office in response to his criticism of the superintendent? I mean, you would agree that was an adverse action taken, would you? Well, I think it's certainly when you say an adverse action, I think you look at the lies that was already cited, it was a total removal. The fact is if you were going to a board meeting, and most of the board meetings are that Mr. Blair fully participates, fully says what he wants to say and has all the rights of a board member. He's not a president anymore, which is a very important position according to your own statement. But the officers serve at the discretion of the board and are representatives of the board and they're entitled to select representatives of their choice. Right. But you can't violate someone's constitutional rights in the process of making those decisions. We don't. Got to go along to get along here, I think. Well, no. Let me point out that I'm not saying we don't believe we violate any rights. We recognize it's individual rights to say what he's going to say. The question whether he can keep a leadership position, I mean, the national thing is Joe Lieberman campaigned for the Republican candidate for president. You know, it's very likely that he'll lose some of his leadership roles. Now, he exercises First Amendment rights. That doesn't mean that there are consequences for what you say. And it doesn't violate your First Amendment rights for the fact there are consequences politically. Do you have a case that supports your argument that there can be no liability under Section 1983 when fellow elected officials remove one of their own? Well, the cases that are in point and that we point out in our briefs. Give me your very strongest case. Well, I'd point out two of them. One is Brandon v. Camacho, which is a Second Circuit case involving the removal of an aide to a city council member who was a dissident. Well, that's different. That's not an elected official. Well, no. If you read the case, what the case says is before the aide can have rights, you have to look to see what the rights of the city councilman were to First Amendment protection for assessing his views. You have a different case. That one's different. The second case, you know, the Ninth Circuit's as big as versus best and best. And it's, again, a city attorney's case where the city attorney's firm had an associate attorney who was campaigning against certain council positions and council members. It looks like we really don't have anything that's directly on point here. Yeah, I don't think you – when you ask if there are cases on point, there are certain cases that are persuasive, you know, and we cite that number in our briefs. There's a failing case out of the Tenth Circuit. So does that mean it's not clearly established? Well, let me answer it this way. It's certainly not clearly established that the board violated any rights. I mean, obviously, unqualified immunity, that's pertinent. But, you know, in our view, it's clearly established that when you're in the political arena, you're a policymaker, that you're subject to the consequences of what you say and do. What case clearly establishes that? Well, when you say it, can I point to a school board case? You know, I think when you read the cases – I mean, the other one, there's a case involving city council. Zilich v. Langeau decided it involves a resolution censuring a city council member. You know, you have Phelan, which is, again, a censure. You have Biggs v. Best in the Ninth Circuit, which is, again, talking about when you work or are a policymaker, how you're subject to censure for the statements and actions you take. That's basic American politics. Was there a way for the board to express – the majority of the board to express its disapproval with the appellant rather than just removing him? A resolution saying we all back the district superintendent, for example? Well, in effect, they did that. They voted 4-1 to extend his contract for another year and to approve his evaluation of his performance. How do you respond? Councils seem to say to me that it was the removal, it was action, rather than expression of a point of view that crossed the line here. How do you respond to that point? The basic response is that a board of directors has a right to choose its own leadership that represents its views. They had done that when they elected him as vice president and removed him before his term expired. He serves at the pleasure of the majority of the board, and when they lost confidence in his ability to convey the views of the board and to represent them in a public setting, they had the right to select leadership that accurately reflected their views. Nobody – if you look at this, Mr. Blair has continued to speak out. There are a number of cases saying it's not – we haven't muzzled him in any respect. But what we've said is as far as a leadership position for the board, that the majority has a right to have leadership that reflects their views. In addition, what I attempted to explain is that part of the leadership's responsibility is to coordinate with the superintendent. As you might suspect, when you refer to the superintendent as being dishonest, and I use counsel's word, involving waste, mismanagement, and corruption, I think he said in his argument this time, as you might imagine, that impinges on the communication and interrelationship between that communication link between the majority of board members and the superintendent. And I think it doesn't take much of an imagination to know that that relationship between Mr. Blair and the superintendent is strained to the point where the board felt that to have leadership and to have the type of communication system, that they had the right and the need to have somebody in that position that would be both responsive to the majority of the board and responsive to the superintendent. The fact of the matter is, Mr. Blair is not in the mainstream. It's a 4-1 board with Mr. Blair not only criticizing the superintendent but the other board members for their positions. When he's in public, when he's expressing as a spokesperson for the board, when he's communicating with the superintendent, it's the board's concern that he is not going to express the feelings of the majority of the board. And so they selected new leadership. It's as simple as that. It happens in politics. You know, the question, you know, this is a local school district and, you know, it is a political entity. You know, if you look at the legislature, you look at, they remove leadership depending on their views and their statements on their last election, whatever it happens to be. This is the political arena. And so I don't think this is something unique or unusual. And I think when you ask me what case law, I think it's so well established that when you're in the majority or you're the majority party, you get to select, for example, the head of all the committees to determine the legislative agenda, et cetera. Why is the law different for a public school district in that capacity versus in the legislature or any other governmental entity? There's a difference in size, but a local entity has the right to govern itself as well. Thank you. All right, thank you, counsel. Rebuttal? Thank you. I've got so many points to hit. And you've got two minutes to do it. I know. The first one is the entire removal from the position versus removal of a title is just a matter of degree. It's still raw punishment for speech. It's admitted in this case. He's making up facts now as to what the real motivations were about. Well, he might not be able to get along, this, that, and the other thing. And ultimately it's still relevant, excuse me, because the Pickering Balancing Test has no application outside of the public employment context. It doesn't apply in this case. So we aren't even addressing those issues. Also, you know, they did more than just remove his title. There were threats before they did it, and also there was literally physical assaults before they did it. There was a compelling discussion in his declaration about how one of the school So it goes beyond this. We have a whole campaign of petty harassment that Aaron Gross that should be actionable. Ultimately, an adverse action is a question of fact that should be given to the jury. Under Title VII, we have a model jury instruction on what is an adverse action. I want to pick up an analogy he gave as your opposing counsel. In Congress, in the Senate, for example, they strip a chairman of his position because he doesn't go along with the majority party vote on something. Would that, in your view, entitle the former chairman to have a civil rights violation against what, the other members of his party in the Senate? Potentially, and I think this all started out dealing with, if I recall correctly, the initial case of the Bonds case that dealt with, I believe it dealt with Congress, where someone, because of who they were and the way they approached things, was literally, I believe, stripped of their office. I'm trying to remember the facts of that case, but that was the very beginning, 1968, where they found this protection. A couple of things, I can't go through them all. Ninth Circuit Model Instruction 10.4A1 talks about what is an adverse employment action for Title VII purposes. A lot overlap, generally, between these two laws. One is just simply lower job ratings, job performance, decreased job responsibilities, removal of title, decreased job responsibilities, failure to receive a promotion. The Calzer v. City of Salem case, dealing with public employment, deals with unwarranted retaliation. To say this was a Title VII case would be a leap that I think you would have trouble finding any court to make. No, no, no. But when it comes to the retaliation part of Title VII, it is very analogous to the retaliation First Amendment concepts. And, in fact, you look at the Coles-Alter case, and they look at what is the standards. They look to Title VII cases as well. So they are somewhat interchangeable as far as standard. Even in the Ninth Circuit Model Instruction dealing with citizen speech, which is Model Instruction 10.9.10, it cites the Mendocino case. And the real issue is political speech, for speech to be actionable, it does not have to be proved that the plaintiff's speech was actually inhibited or suppressed. That's where, really, the district court erred in this case, was finding that a subjective test was applicable, and the fact that he's been courageous means he doesn't get protection, which, again, is counterintuitive. Interesting case. I suggest that, ultimately, we have a factual issue here. Give it to a jury. Let the jury decide whether this was punishment. All right, counsel, we understand your argument. Thank you. Thank you to both counsel. The case has argued and submitted for a decision by the court. We will be in recess for ten minutes.
judges: Burns, Rawlinson, Callahan